2012 UT 79

**UTAH DEPARTMENT OF TRANSPOR-TATION, Plaintiff and Petitioner,**

v.

**FPA WEST POINT, LLC; First American Title Insurance Company; Bank of America, NA, fka LaSalle Bank; Kmart Corporation; and New Albertson's Inc., Defendants and Respondents.**

No. 20110354.

Supreme Court of Utah.

Nov. 20, 2012.

Rehearing Denied July 9, 2013.

Mark L. Shurtleff, Att'y Gen., Nancy L. Kemp, Barbara H. Ochoa Asst. Att'ys Gen., Salt Lake City, for petitioner.

Kenneth A. Okazaki, Bruce Wycoff, Salt Lake City, for respondent, FPA West Point, LLC.

Perrin R. Love, Salt Lake City, for respondent, Kmart Corporation.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal results from an action in eminent domain, in which the Utah Department of Transportation (UDOT) sought to condemn an access point easement (Access) on property owned by FPA West Point (FPA). FPA's codefendant and lessee, Kmart Corporation (Kmart), also claims an interest in the Access. Because of the different interests claimed by FPA and Kmart, FPA filed a motion asking the court to order separate just compensation determinations. The district court granted the motion.

¶ 2 In making this decision, the court determined that, under section 78B-6-511(1) of the Utah Code (Assessment Statute) and our decision in *Town of Perry v. Thomas*,[1] FPA must be "granted the opportunity to have its interests valued separately from other interests in the subject property." Further, the court concluded that language in our decision in *State ex rel. Road Commission v. Brown*[2] conflicted with the Assessment Statute and with our decision in *Thomas* because it construed *Brown* as "holding that the condemned property must be valued as a whole, leaving the apportionment of that value to be determined amongst the respective interest holders." UDOT filed a petition for permission to take an interlocutory appeal from that order, which we granted.

¶ 3 This appeal requires us to consider (I) whether Utah law requires that the values of respective interests in a parcel of condemned property must be individually assessed, and (II) whether that assessment may be conducted in either separate or consolidated proceedings. First, we conclude that the district court was correct in determining that the values of respective interests in a parcel of

1. 82 Utah 159, 22 P.2d 343 (1933).

2. 531 P.2d 1294 (Utah 1975).

condemned property must be individually assessed. Second, we conclude that the value of respective interests may be individually assessed in either separate or consolidated proceedings. Accordingly, the district court has the discretion to order separate proceedings in an action involving multiple interest holders in a condemned parcel of property. But because it is unclear from the district court's order and memorandum decision whether it intended that FPA's and Kmart's interests be assessed through separate or through consolidated proceedings, we remand to the district court with instructions to determine whether to order separate or consolidated proceedings in this matter.

## BACKGROUND

¶ 4 On April 29, 2010, UDOT filed a complaint, seeking to condemn the Access on FPA's property. The Access allowed entrance from Bangerter Highway to the West Point Shopping Center in Taylorsville, Utah (Property). FPA leases space on the Property to several tenants. Kmart, the only other defendant with a brief before us in this matter, leased space on the Property from FPA.[3]

¶ 5 Both FPA and Kmart claim an interest in the Access. Specifically, Kmart operated a store on the Property pursuant to a lease for nearly thirty years, and the Access allowed customers to enter the Property directly in front of the Kmart store. Kmart claims that, "[b]y taking the Access, UDOT substantially and materially impaired Kmart's access, causing Kmart's [l]ease to terminate pursuant to its terms." Accordingly, rather than renewing its lease, Kmart decided to operate the store on a month-to-month basis for eight months before finally closing the store.

¶ 6 During the course of the condemnation proceedings, FPA filed a motion asking the court to order separate just compensation determinations. Among other things, FPA's

memorandum in support of the motion set forth the following facts. Prior to the commencement of the condemnation action, UDOT commissioned an appraisal report, which estimated that the market value of the taking of FPA's interest would be $1,250,000. But the appraisal report contained no opinion regarding the value of the taking of Kmart's interest in the property. In addition, while Kmart had demanded a jury trial, FPA did not intend to request that a jury determine the just compensation to which it was entitled. Accordingly, FPA urged the court to "order the determination of the just compensation due FPA for the injury to its fee interest in the Subject Property [to be determined separately] from the determination of the just compensation due Kmart for injury to its limited estates in only a portion of the Subject Property."

¶ 7 In analyzing FPA's motion, the district court reasoned that, under subsection (1)(b) of the Assessment Statute and our holding in *Town of Perry v. Thomas*,[4] FPA must "be granted the opportunity to have its interests valued separately" from the other interests in the Property. Further, the court concluded that certain language in our decision in *State ex rel. Road Commission v. Brown*[5] conflicts with the Assessment Statute and our decision in *Thomas*, and that "*Brown* stands out as the lone legal authority in Utah persistently applying the general valuation approach in a state which has clearly chosen to opt out of that approach." Accordingly, the court granted FPA's motion asking the court to order separate just compensation determinations under subsection (1)(b) of the Assessment Statute and our holding in *Thomas*. In response, UDOT filed a petition for permission to take an interlocutory appeal from the district court's order, which we granted.

¶ 8 We have jurisdiction under section 78A–3–102(3)(j) of the Utah Code.

---

**3.** This matter initially involved five defendants, but two defendants (Bank of America and First American Title Insurance Co.) did not answer the complaint or otherwise appear in the proceedings, and a third defendant (New Albertson's Inc.) stipulated to a final judgment of condemna-

tion. Thus, FPA and Kmart are the only remaining defendants in this action.

**4.** 82 Utah 159, 22 P.2d 343 (1933).

**5.** 531 P.2d 1294 (Utah 1975).

## STANDARD OF REVIEW

¶ 9 We review questions of statutory interpretation for correctness.[6] Similarly, "[a] lower court's interpretation of binding case law presents a question of law which we review for correctness."[7]

## ANALYSIS

¶ 10 In reviewing the district court's decision to grant FPA's motion, we consider (I) whether Utah law requires that the value of respective interests in a parcel of condemned property be individually assessed, and (II) whether the assessment may be conducted in either separate or consolidated proceedings. First, we conclude that the value of respective interests in a parcel of condemned property must be individually assessed, or in other words, that courts should apply the aggregate-of-interests approach rather than the apportionment approach adopted in many other jurisdictions. Second, we conclude that the aggregate-of-interests approach may be applied in either separate or consolidated proceedings, at the discretion of the district court. But we note that the interests of the parties and judicial economy will often be best served through consolidated proceedings. In this case, because it is unclear from the district court's order and memorandum decision whether it intended that FPA's and Kmart's interests be assessed through separate or through consolidated proceedings, we remand to the district court with instructions to determine whether to order separate or consolidated proceedings in this matter.

## I. UTAH LAW REQUIRES THAT THOSE HOLDING INTERESTS IN CONDEMNED PARCELS OF LAND HAVE THE VALUE OF THEIR INDIVIDUAL INTERESTS ASSESSED UNDER THE AGGREGATE-OF-INTERESTS APPROACH RATHER THAN UNDER THE APPORTIONMENT APPROACH

¶ 11 In determining whether to grant FPA's motion, the district court considered which of two assessment methods should apply to FPA's and Kmart's interests. Specifically, the court considered whether (1) parties holding interests in a condemned parcel of land must have "the opportunity to have [their] interests valued separately from other interests in the subject property," or (2) whether "condemned property must be valued as a whole, leaving the apportionment of that value to be determined amongst the respective interest holders." The court concluded that the value of each respective interest in the parcel must be individually assessed. We agree.

¶ 12 In our discussion, we will refer to the first method as the "aggregate-of-interests" approach,[8] although in other jurisdictions, it is known by other names, including the "separate valuation rule"[9] and the "independent valuation rule."[10] We will refer to the second method as the "apportionment approach,"[11] although it is known by different names, including the "undivided-fee rule"[12] and the "unit rule."[13] A majority of jurisdictions have adopted some form of the apportionment approach,[14] although the imple-

6. *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 7, 211 P.3d 382.

7. *State v. Leyva*, 951 P.2d 738, 741 (Utah 1997).

8. *See, e.g., Cnty. of Clark v. Sun State Props., Ltd.*, 119 Nev. 329, 72 P.3d 954, 958–59 (2003).

9. *See, e.g., City of Milwaukee Post No. 2874 Veterans of Foreign Wars of the U.S. v. Redev. Auth.*, 319 Wis.2d 553, 768 N.W.2d 749, 752 (2009).

10. *See, e.g., id.*

11. *See* R.T.K., Annotation, *Are Different Estates or Interests in Real Property Taken Under Eminent Domain to Be Valued Separately, or Is Entire Property to Be Valued as a Unit and the Amount Apportioned Among Separate Interests*, 69 A.L.R.

1263 (1930) (explaining that, under this method of assessment, instead of independently assessing the value of individual interests in a condemned parcel of property, the court is "to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates").

12. *See, e.g., Sun State Props., Ltd.*, 72 P.3d at 958.

13. *See, e.g., City of Milwaukee Post No. 2874*, 768 N.W.2d at 752.

14. *See* E.H. Turri, Annotation, *Are Different Estates or Interests in Real Property Taken Under Eminent Domain to Be Valued Separately, or Entire Property to Be Valued as a Unit and the*

mentation varies from state to state, and a minority of jurisdictions have adopted the aggregate-of-interests approach.[15]

¶ 13 Although the implementation of these methods varies among jurisdictions, in general, under the aggregate-of-interests approach, "each of the various interests that contribute to the value of the real property are valued separately, and the total represents the market value of the real property."[16] Under this approach, "the condemnor pays each of the several owners the fair market value of his, her, or its property interest even [if] the total amount paid exceeds the fair market value of the property as if owned by a single owner."[17] But under the apportionment approach, "condemned property is first valued as though it was unencumbered, and in a subsequent hearing, the total award is apportioned among the various interests."[18] Thus, the apportionment approach "determines the fair market value as if only one person owned the property," and "the condemnor makes a single payment for the property taken and the payment is then apportioned among the various owners," instead of the condemnor "paying the value of each owner's partial interest."[19]

¶ 14 In other words, under the aggregate-of-interests approach, the value of each individual interest is assessed and then these values are added together in order to determine the full value of the property, rather than the full value of the property serving as a cap on the condemnation award that individual interest holders can receive. Thus, under the aggregate-of-interests approach, the value of each respective interest is assessed before the condemnation award is determined, and the condemnation award is based on these values. But under the apportionment approach, a condemnation award is not determined by the value of the respective interests in a condemned parcel of property.

Instead, the condemnation award is determined after assessing the value of the property as a whole, as though it belonged to a single owner. Then after determining the condemnation award, the court apportions the award among the interest holders based on the value of their respective interests. Thus, the starting point for the assessment is different under each approach.

¶ 15 By concluding that individual interests must be individually assessed, the district court determined that Utah law requires courts to employ the aggregate-of-interests approach. We conclude that (1) the plain language of the Assessment Statute, (2) our case law interpreting a former version of the Assessment Statute, and (3) our case law interpreting Article I, section 22 of the Utah Constitution (Takings Clause) all support the conclusion that the district court was correct in determining that the aggregate-of-interests approach is the correct approach for assessing the value of individual interests in condemnation proceedings.

A. *The Plain Language of the Assessment Statute Supports Assessing the Value of Interests in Condemned Parcels of Land Under the Aggregate–of–Interests Approach*

¶ 16 Although the Assessment Statute does not mandate unequivocally either approach, its plain language supports the aggregate-of-interests approach. The Assessment Statute, section 78B–6–511(1) of the Utah Code, provides guidance to the fact finder as to factors to consider in arriving at a condemnation award. The Assessment Statute provides that, as the starting point for determining compensation and damages in a condemnation proceeding, the fact finder

shall hear any legal evidence offered by any of the parties to the proceedings, and

---

*Amount Apportioned Among Separate Interests,* 166 A.L.R. 1211 (1947).

**15.** *See, e.g., State Highway Dep't v. Thomas,* 115 Ga.App. 372, 154 S.E.2d 812, 816 (1967); *Wilson v. Fleming,* 239 Iowa 718, 31 N.W.2d 393, 401–02 (1948); *State v. Platte Valley Pub. Power & Irrigation Dist.,* 147 Neb. 289, 23 N.W.2d 300, 312 (1946).

**16.** *Sun State Props., Ltd.,* 72 P.3d at 958–59.

**17.** *City of Milwaukee Post No. 2874,* 768 N.W.2d at 760.

**18.** *Sun State Props., Ltd.,* 72 P.3d at 958.

**19.** *City of Milwaukee Post No. 2874,* 768 N.W.2d at 758.

determine and assess . . . (a) the value of the property sought to be condemned and all improvements pertaining to the realty; (b) the value of each and every separate estate or interest in the property; and (c) if it consists of different parcels, the value of each parcel and of each estate or interest in each shall be separately assessed.[20]

¶ 17 When interpreting a statute, "our primary goal is to evince the true intent and purpose of the Legislature."[21] To accomplish this goal, "we first look to the plain language of the statute."[22] In examining the plain language, "we read the language of the statute as a whole and also in its relation to other statutes."[23] We also "read each term according to its ordinary and accepted meaning."[24] Additionally, we "assume that each term included in the statute was used advisedly, and we seek to give effect to every word, clause, and sentence if such can be reasonably done."[25]

¶ 18 The Assessment Statute provides that the fact finder shall "determine and assess the value of the property sought to be condemned and all improvements pertaining to the realty" *and* "the value of each and every separate estate or interest in the property."[26] Further, "if [the property] consists of different parcels," the fact finder shall also "separately assess[ ]" "the value of each parcel and of each estate or interest" therein.[27] In other words, in determining a condemnation award, the fact finder must "determine and assess" each of the items listed in the Assessment Statute, if applicable to the proceedings.[28] Thus, when the proceedings involve a single parcel of condemned property in which multiple interest holders have interests, the fact finder must determine and assess "the value of the property sought to be condemned and all improvements pertaining to the realty" and "the value of each and every separate estate or interest in the property."[29]

¶ 19 The aggregate-of-interests approach is consistent with this statutory language because, as we have explained, under this approach, the value of each individual interest is assessed and then the values of these interests are added together in order to determine the full value of the property.[30] Thus, a fact finder following this approach will satisfy the Assessment Statute's requirement to determine and assess "the value of each and every separate estate or interest in the property,"[31] and in considering the aggregate of these individual interests, the fact finder will also satisfy its statutory obligation to determine and assess "the value of the property sought to be condemned" as a whole, as well as "all improvements pertaining to the realty."[32]

¶ 20 Further, the statute requires that the fact finder "hear any legal evidence offered by any of the parties to the proceedings."[33] Thus, under the aggregate-of-interests approach, the fact finder may still hear evi-

20. Utah Code § 78B–6–511(1). Section 78B–6–511 contains additional provisions to guide the court in calculating compensation and damages in condemnation proceedings, but these provisions are not directly relevant to the issue presented to us in this interlocutory appeal. *See id.* § 78B–6–511(2)–(7).

21. *State v. Davis*, 2011 UT 57, ¶ 21, 266 P.3d 765 (internal quotation marks omitted).

22. *Id.*

23. *Id.* (internal quotation marks omitted).

24. *Id.* (internal quotation marks omitted).

25. *Id.* (alterations omitted) (internal quotation marks omitted).

26. Utah Code § 78B–6–511(1)(a)(b).

27. *Id.* § 78B–6–511(1)(c).

28. *Id.* § 78B–6–511.

29. *Id.* § 78B–6–511(1)(a)-(b).

30. *See supra* ¶¶ 13–14. We note that although the opinions we have cited from other jurisdictions aid our general discussion of the aggregate-of-interests approach, we do not conclude that the Assessment Statute necessarily requires us to follow the precise procedures adopted by those jurisdictions. Instead, those opinions inform the approach we clarify in this opinion. *See infra* Part I.C.

31. Utah Code § 78B–6–511(1)(b).

32. *Id.* § 78B–6–511(1)(a).

33. *Id.* § 78B–6–511.

dence about the value of the property as a whole and any improvements to the realty independent of the respective interests in the property, and such evidence may inform its assessment of the respective interests and their aggregate value.[34] The court's consideration of such evidence in making its ultimate assessment of the respective interests and their aggregate value should allay any concerns about the aggregate value of the interests being grossly disparate from the value of the property as an unencumbered whole.[35]

¶ 21 In contrast, the apportionment approach is not consistent with the plain language of the Assessment Statute because the statute does not require the fact finder to assess the full value of the property to determine a condemnation award, and then later apportion the condemnation award among the interest holders according to their respective interests. And nothing in the language of the Assessment Statute indicates that the assessment of the property as a whole should serve as a cap limiting the award that respective interest holders can receive. Instead, as discussed above, the Assessment Statute lists multiple items for the court to consider in determining the condemnation award for damages, and instructs the fact finder to "determine and assess" both "the value of the property sought to be condemned and all improvements pertaining

to the realty" and "the value of each and every separate estate or interest in the property." [36] Accordingly, the plain language of the Assessment Statute supports the aggregate-of-interests approach rather than the apportionment approach.

### B. Our Case Law Interpreting a Former Version of the Assessment Statute Supports Assessing the Value of Interests in Condemned Parcels of Land Under the Aggregate–of–Interests Approach

¶ 22 Our case law interpreting the predecessor statute to the Assessment Statute also supports the aggregate-of-interests approach. In *Town of Perry v. Thomas*,[37] we considered a condemnation proceeding involving land taken from multiple owners. We quoted a portion of the predecessor to the Assessment Statute, which is nearly identical in wording to the statute that is currently in effect, and which stated that the fact finder "must ascertain and assess ... [t]he value of the property sought to be condemned [and] if it consist of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed." [38] We held that, under this statute, whether the assessment was conducted in separate or consolidated proceedings, "each owner is entitled to have separately assessed

---

**34.** Similarly, subsection (c) of the Assessment Statute states that if the condemned land "consists of different parcels, the value of each parcel and of each estate or interest in each shall be separately assessed." *Id.* § 78B–6–511(1)(c). Under the aggregate-of-interests approach, a court would fulfill the statutory requirements of subsection (c) by assessing the value of each respective interest in every condemned parcel and then adding the value of the respective interests together to determine the value of every individual parcel.

**35.** We note that allowing information about the value of the property as a whole, and all improvements to the realty, to inform the assessment of the value of individual interests addresses a concern that another court voiced about the aggregate-of-interests approach when it said that "use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property." *Sun State Props., Ltd.*, 72 P.3d at 959 (alteration omitted) (internal quota-

tion marks omitted). Adhering to our statutory language in following the aggregate-of-interests approach obviates this concern.

**36.** Utah Code § 78B–6–511(1)(a)–(b).

**37.** 82 Utah 159, 22 P.2d 343 (1933).

**38.** *Id.* at 347 (quoting Utah Comp. Laws 1917, § 7340) (alteration omitted). In its entirety, this subsection of the predecessor statute reads as follows:

The [fact finder] must hear such legal evidence as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:
(1) The value of the property sought to be condemned and all improvements thereon appertaining to the realty, and of each and every separate estate or interest therein; and if it consists of different parcels, the value of each parcel and of each estate or interest therein shall be separately assessed.

the value of the land in separate ownership and *each estate or interest therein.*" [39]

¶ 23 Although there were multiple landowners in the condemnation proceeding at issue, we did not limit our holding to the individual assessment of the different parcels of land; instead, we specifically stated that "each estate or interest therein" should also be separately assessed.[40] This language indicates that respective interests should be individually assessed according to the aggregate-of-interests approach. Indeed, · an A.L.R. article has recognized our holding in *Thomas* that "each owner is entitled to have separately assessed the value of the land in separate ownership and each estate or interest therein" as a "decision[ ] in which it has been held that, pursuant to express statutory provisions, the value of each separate interest or estate in land should be separately assessed rather than be computed in a lump sum to be apportioned among the various owners according to their respective interests or estates." [41]

C. *Our Case Law Interpreting the Takings Clause of the Utah Constitution Supports Assessing the Value of Interests in Condemned Parcels of Land Under the Aggregate–of–Interests Approach*

■ ¶ 24 The Takings Clause governs the taking of private property for public use. This constitutional provision states that "[p]rivate property shall not be taken or damaged for public use without just compensation." [42] And we have recognized that "[a]

lessee holding under a valid lease also has a property interest protected by the takings clause of the constitutional provisions." [43] Our case law interpreting the Takings Clause supports the aggregate-of-interests approach rather than the apportionment approach.

■ ¶ 25 In *Utah Department of Transportation v. Admiral Beverage Corp.,*[44] we acknowledged "longstanding precedent holding that constitutional requirements are satisfied only when a property owner is made whole by placing him in the position he would have occupied but for the taking." [45] Thus, "[o]nce a landowner demonstrates that a protectable property interest has been taken or damaged by government action, the landowner is entitled to just compensation. And . . . when the requirement of just compensation is triggered, the landowner is entitled to compensation to the extent of the damages suffered." [46] This principle "has been interpreted to require that the owners must be put in as good a position money wise as they would have occupied had their property not been taken." [47]

¶ 26 This principle is further illustrated by our analysis in *Admiral Beverage.* In an opinion preceding *Admiral Beverage, Ivers v. Utah Department of Transportation,*[48] we had ruled that "landowners do not have a protected interest in the visibility of their property." [49] But in *Admiral Beverage,* we concluded that our holding in *Ivers* was "too restrictive to accord the full protection of the Utah Constitution and [wa]s inconsistent

REV. STAT. UTAH § 104–61–11(1) (1933).

**39.** *Thomas,* 22 P.2d at 347 (emphasis added).

**40.** *Id.*

**41.** Turri, *supra* ¶ 12 n. 14.

**42.** UTAH CONST. art. I, § 22.

**43.** *Colman v. Utah State Land Bd.,* 795 P.2d 622, 626 (Utah 1990) ("It has been judicially established that lessees for years or from year to year, holding under a valid devise, grant, or lease, have such an interest in property as to be classed as 'owners' in the constitutional sense, and to be entitled to compensation for the taking of their interest." *Id.* (quoting 2 NICHOLS ON EMINENT DOMAIN § 5.06, at 5–97 to –101 (3d ed.1989))).

**44.** 2011 UT 62, 275 P.3d 208.

**45.** *Id.* ¶ 28.

**46.** *Id.* (citations omitted) (internal quotation marks omitted).

**47.** *Id.* (internal quotation marks omitted); *see also id.* ¶ 29 ("Under this framework, a landowner who has suffered a physical taking of land is entitled to the market value of the property taken. . . . [I]f the government takes only a portion of a tract of land, the landowner is entitled to additional compensation if the severance of the condemned property, and the use of that property, caused damages to the remaining property." (emphasis omitted) (internal quotation marks omitted)).

**48.** 2007 UT 19, 154 P.3d 802.

**49.** *Id.* ¶ 12.

with both Utah statutes and our prior case law." [50] Accordingly, we overruled the part of our holding in *Ivers* that "allow[ed] severance damages only for recognized property rights" and thereby "prevent[ed] a landowner from recovering severance damages based on the fair market value of his property before and after the taking." [51] And we held that "[w]hen a portion of a landowner's property is taken, he is entitled to put on evidence of all factors that impact the market value of his remaining property." [52]

¶ 27 The aggregate-of-interests approach is consistent with our case law interpreting the Takings Clause because this approach ensures that, in a condemnation proceeding, all interest holders in a parcel of condemned property receive just compensation for the value of their respective interests. As discussed, the aggregate-of-interests approach requires that the value of each individual interest be assessed and that the values of these interests then be added together in order to determine the full value of the property.[53] And "the condemnor pays each of the several owners the fair market value of his, her, or its property interest even [if] the total amount paid exceeds the fair market value of the property as if owned by a single owner." [54] This approach ensures that all individual interests are accounted for and that each individual interest holder "is made whole by placing him in the position he would have occupied but for the taking." [55]

¶ 28 On the other hand, under the apportionment approach, the value of the full property is assessed to determine the condemnation award, and the court later apportions that award among the individual interest holders based on their interests.[56] Accord-

ingly, the value is determined "as if only one person owned the property," after which "the condemnor makes a single payment for the property taken and the payment is then apportioned among the various owners." [57] Under this approach, "the division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee." [58] In other words, the full value of the property assessed as a whole generally serves as a cap on the award that individual interest holders may receive for their interests, meaning that, after apportionment, interest holders may not be "put in as good a position money wise as they would have occupied had their property not been taken." [59] One court explained this problem with the apportionment approach as follows:

> It is taken for granted that the sum of the values of the divided interest will be exactly equal to the value of the fee as embodied in the total award. In reality, however, the result of a valuation of the undivided estate is often that the total compensation is materially less than an amount sufficient to indemnify the separate claimants, leading one authority to analogize that "in that case, the court finds itself in the place of the head of the household who must superintend the carving up and distribution of a chicken which is really not big enough to go around." [60]

¶ 29 Such a result does not comport with our case law interpreting the Takings Clause. As discussed, parties with constitutionally protected property interests are entitled to compensation to the extent of the damages

---

50. 2011 UT 62, ¶ 1, 275 P.3d 208.

51. *Id.* ¶¶ 1, 43 (internal quotation marks omitted).

52. *Id.* ¶ 43.

53. *See supra* ¶¶ 13–14.

54. *City of Milwaukee Post No. 2874,* 768 N.W.2d at 760.

55. *See Admiral Beverage,* 2011 UT 62, ¶ 28, 275 P.3d 208.

56. *See supra* ¶¶ 13–14.

57. *City of Milwaukee Post No. 2874,* 768 N.W.2d at 758.

58. *Sun State Props., Ltd.,* 72 P.3d at 958 (internal quotation marks omitted).

59. *See Admiral Beverage,* 2011 UT 62, ¶ 28, 275 P.3d 208 (internal quotation marks omitted).

60. *Harco Drug, Inc. v. Notsla, Inc.,* 382 So.2d 1, 5–6 (Ala.1980) (alterations omitted) (quoting ORGEL, ON VALUATION UNDER EMINENT DOMAIN 482).

suffered.[61] Indeed, in *Admiral Beverage*, we struck down restrictions that would prevent an interest holder from being able to recover damages based on the fair market value of his interest.[62] In the case now before us, the apportionment approach could prevent an interest holder from recovering based on the fair market value of his interest because the property is typically assessed as a whole and then the award is apportioned among the interest holders with the full value of the property serving as a cap on the sum total of the awards that the respective interest holders can receive.[63] On the other hand, the aggregate-of-interests approach allows an interest holder to recover based on the fair market value of his interest because each individual interest is independently assessed.[64] Because the apportionment approach may result in interest holders being less than fully compensated for the damages they suffered as a result of the taking, while the aggregate-of-interests approach ensures that individual interest holders will be compensated to the extent of the damages that they suffered, our analysis of the Takings Clause in *Admiral Beverage* supports the aggregate-of-interests approach.

¶ 30 The Nebraska Supreme Court conducted a similar analysis in concluding that the value of respective interests in a condemned parcel of land must be individually assessed to satisfy constitutional principles of just compensation.[65] A Nebraska statute stated that "[i]f the land to be taken is held under [a] lease contract, a finding shall be made as to the interest of the owner in such lease contract, and such value shall be separately assessed."[66] Based on state constitutional principles, the court stated that "[t]he

measure of compensation to each owner must be that which he has lost."[67] The court went on to say that "any rule that so limits the damages [such] that the result will be in fact less than just compensation for the injury suffered falls short of the constitutional measure."[68] The court therefore rejected the method of "first ascertaining the damage to the fee as if it were owned by one person, and un[e]ncumbered, and then apportioning that amount among all the estates and interests."[69] The court instead required that the interest of the owner and the lessee be separately assessed and stated that "[t]he total of the two then constitutes the amount of the award which the condemnor is required to pay."[70]

¶ 31 On the other hand, we note that other courts considering this question have determined that the apportionment approach does not violate their state constitutional principles of just compensation. For instance, the Wisconsin Supreme Court, in ruling that the apportionment approach did not violate a similar state constitutional provision,[71] explained that "although partial owners are constitutionally entitled to just compensation, contracts between the owners of different interests in the land should not be permitted to result in a total sum which is in excess of the whole value of the undivided fee."[72] And in a prior case, it noted that this approach "is designed to protect the interests of the condemnor and not to protect the interests of a condemnee."[73]

¶ 32 But such an analysis is not consistent with our case law analyzing the Takings Clause of the Utah Constitution. We have

61. *Admiral Beverage*, 2011 UT 62, ¶ 28, 275 P.3d 208.

62. *See id.* ¶ 43.

63. *See, e.g.*, *Sun State Props., Ltd.*, 72 P.3d at 958.

64. *See, e.g., id.* at 958–59.

65. *Platte Valley*, 23 N.W.2d at 305–09.

66. *Id.* at 309 (internal quotation marks omitted).

67. *Id.* at 311.

68. *Id.* at 312 (internal quotation marks omitted).

69. *Id.* (internal quotation marks omitted).

70. *Id.*

71. *See* Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor.").

72. *City of Milwaukee Post No. 2874*, 768 N.W.2d at 761–62 (emphasis omitted) (internal quotation marks omitted).

73. *Green Bay Broad. Co. v. Redev. Auth.*, 116 Wis.2d 1, 342 N.W.2d 27, 32 (1983).

explicitly stated that "[t]he policy behind Utah's constitutional provision is to ensure that the burden for damage done to private property is distributed among all the taxpayers rather than upon those only who sustained the injury."[74] And while the apportionment approach may protect the condemner, the aggregate-of-interests approach is consistent with Utah's policy of ensuring that taxpayers share in bearing the burden from any taking of protected property rather than leaving interest holders to suffer uncompensated losses as the result of such takings.[75]

¶ 33 On the other hand, UDOT argues that our language in *State ex rel. Road Commission v. Brown*[76] supports the apportionment approach rather than the aggregate-of-interests approach. The district court concluded that "the *Brown* decision conflicts with [the Assessment Statute] in holding that the condemned property must be valued as a whole, leaving the apportionment of the value to be determined amongst the respective interest holders." Thus, the court stated that "*Brown* must be explained as simply opting to follow a valuation approach that is contrary to the one selected by the Utah Legislature, namely [valuing] each interest separately." Reasoning that "*Brown* stands out as the lone legal authority in Utah persistently applying the general valuation approach in a state which has clearly chosen to opt out of that approach," the court rejected UDOT's argument that our holding in *Brown*

should be applied as a basis for denying FPA's motion. We agree with the district court's analysis.

¶ 34 In *Brown*, we did not directly consider the proper method of assessing the respective interests in a condemned parcel of property.[77] Instead, in *Brown*, we considered whether a jury's award for severance damages was "sustained by the evidence" despite allegedly improper expert testimony and an erroneous jury instruction.[78] We did not compare and contrast the apportionment approach with the aggregate-of-interests approach and discuss which approach is proper under Utah law. Indeed, we did not even analyze the then-applicable former version of the Assessment Statute, the Takings Clause, or our case law interpreting either provision. Accordingly, our language in *Brown* relating to the method by which different interests in a condemned parcel of property should be assessed appears to be dicta.[79] And as discussed above, our analysis of the plain language of the Assessment Statute and our case law interpreting the Takings Clause demonstrate that the aggregate-of-interests approach, rather than the apportionment approach, is the proper method for assessing the value of respective interests in a parcel of condemned property. Thus, any language in *Brown* supporting the apportionment approach is not consistent with the aggregate-of-interests approach that we adopt in this opinion today, and we expressly disavow it.[80]

---

**74.** *Admiral Beverage*, 2011 UT 62, ¶ 21, 275 P.3d 208 (internal quotation marks omitted); *accord Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725 (1910) ("[T]he Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is, What has the owner lost? not, What has the taker gained?").

**75.** *See Admiral Beverage*, 2011 UT 62, ¶ 21, 275 P.3d 208.

**76.** 531 P.2d 1294, 1295 (Utah 1975) (quoting a C.J.S. article for the proposition that "[t]he rule is generally recognized that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper meth-

od of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates" (alteration omitted)).

**77.** *Id.* at 1296.

**78.** *Id.* at 1295.

**79.** *See State v. Gardiner*, 814 P.2d 568, 572 (Utah 1991) ("[T]his court is not bound by earlier dicta." (internal quotation marks omitted)).

**80.** *See Admiral Beverage*, 2011 UT 62, ¶ 16, 275 P.3d 208 ("[W]e may overturn our precedent if we are clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent." (internal quotation marks omitted)).

¶ 35 In sum, the plain language of the Assessment Statute, our case law interpreting a former version of the Assessment Statute, and our case law interpreting the Takings Clause of the Utah Constitution, all support the conclusion that the aggregate-of-interests approach is the proper approach for assessing the value of respective interests in condemned property. Accordingly, we conclude that the district court was correct in determining that Utah law requires parties to have the value of their respective interests individually assessed under the aggregate-of-interests approach.

## II. THE ASSESSMENT OF THE VALUE OF INDIVIDUAL INTERESTS MAY BE CONDUCTED IN SEPARATE OR IN CONSOLIDATED PROCEEDINGS, AT THE DISCRETION OF THE DISTRICT COURT

¶ 36 Having determined that Utah law requires that interest holders have the value of their respective interests individually assessed under the aggregate-of-interests approach, we next consider whether this assessment should be conducted in separate or consolidated proceedings. Section 78B–6–507(2) of the Utah Code (Proceedings Statute) authorizes district courts to order separate or consolidated proceedings in condemnation actions involving multiple parcels of land within a county, and we conclude that the Proceedings Statute applies to actions involving multiple interest holders in a single condemned parcel of property. But in this case, we also conclude that it is unclear from the district court's order and memorandum decision whether it intended for FPA's and Kmart's interests to be assessed through separate or through consolidated proceedings. Accordingly, we remand to the district court with instructions to determine whether to order separate or consolidated proceedings in this matter.

### A. The Proceedings Statute Provides the District Court with Discretion to Order Separate or Consolidated Proceedings to Assess the Value of Individual Interests in Condemned Property

¶ 37 In its motion asking the court to order separate just compensation determinations, FPA argued that the Proceedings Statute gave the court power to do so. And although the Assessment Statute does not require the court to conduct separate proceedings to assess the value of the respective interests in a parcel of condemned property,[81] the Proceedings Statute provides that "[a]ll parcels lying in the county and required for the same public use may be included in the same or separate proceedings, at the option of the plaintiff, but the court may [conduct] consolidate[d] or separate [proceedings] to suit the convenience of parties."[82] We conclude that the Proceedings Statute provides the court with discretion to order separate proceedings involving multiple interests in the same property for the following reasons.

¶ 38 First, the Utah Code specifies that, unless it is "inconsistent with the manifest intent of the Legislature" or "repugnant to the context of the statute," in constructing statutes, "[t]he singular includes the plural, and the plural includes the singular."[83] Applying this rule of construction, we read the Proceedings Statute to include single parcels of property as well as multiple parcels of property. Accordingly, in a condemnation action involving multiple interests in a single parcel of property, the Proceedings Statute authorizes the court to conduct consolidated or separate proceedings regarding multiple interests in a parcel of property to suit the convenience of the parties.

¶ 39 We apply this rule of construction to the Proceedings Statute because there is no indication that it would be "inconsistent with the manifest intent of the Legislature"[84] or "repugnant to the context of the statute"[85] to read the statute to include single parcels of property and therefore give the court discre-

---

81. Utah Code § 78B–6–511(1).

82. *Id.* § 78B–6–507(2).

83. *Id.* § 68–3–12(1)(a)–(b).

84. *Id.* § 68–3–12(1)(a)(i).

85. *Id.* § 68–3–12(1)(a)(ii).

tion to order separate or consolidated proceedings involving individual interests within a single parcel. Indeed, given the Utah Legislature's willingness to provide the court with discretion to conduct consolidated or separate proceedings involving multiple parcels of property, it seems reasonable to allow the court the same discretion to conduct consolidated or separate proceedings involving multiple interests in the same parcel of property. In other words, in both cases, the situation is largely the same. In one situation, multiple parcels of property are involved, but the practical result is that the proceedings will involve multiple parties whose property is being taken for the same public use. In the second situation, only one parcel of property is involved, but again, the practical result is that the proceedings will involve parties whose property is being taken for the same public use.

¶ 40 Moreover, whether we are dealing with multiple parcels of land or different interests within one parcel, there may be different factors that would weigh in favor of consolidated or separate proceedings. For instance, both different parcels and individual interests can be close in geographic proximity and share similar features, which would weigh in favor of assessing their value through consolidated proceedings. On the other hand, both different parcels and individual interests may have unique features or improvements that would weigh in favor of assessing their value through separate proceedings. Of course, the district court would consider many other factors in determining how the proceedings should be conducted to fairly and efficiently resolve the matter. Thus, the rationale for allowing the court discretion to order consolidated or separate proceedings to suit the convenience of the parties in situations involving multiple parcels also applies to situations involving multiple interests within a single parcel.

¶ 41 Second, in *Town of Perry v. Thomas*, when discussing the predecessor statute to the Proceedings Statute, which was substantially similar in wording, we specifically stated that the law "vests discretion in the court"

to conduct separate or consolidated proceedings in "such actions to meet [the] convenience of the parties." [86] And we explained that "[i]n either event, each owner is entitled to have separately assessed the value of the land in separate ownership and each estate or interest therein." [87] This language recognizes that parties can have the value of ownership interests in multiple parcels, as well as individual interests within a parcel, individually assessed in either separate or consolidated proceedings.

¶ 42 Third, interpreting this statute to afford the court discretion to order separate proceedings in situations involving multiple interests in the same parcel of property will promote justice when parties' interests, situations, or intentions diverge greatly. For instance, in this case, Kmart has demanded a jury trial, but FPA has indicated that it will not request that a jury determine the just compensation to which it is entitled. Although it will be up to the district court to determine if it is appropriate to order separate proceedings in a given situation, when parties have widely divergent needs, it might be more complicated to consolidate the proceedings than it would be to conduct separate proceedings and allow the assessment of each party's interest to proceed independently.

¶ 43 Nonetheless, although courts have discretion to order separate proceedings under the Proceedings Statute, we note that there are reasons why consolidating proceedings between parties holding interests in the same parcel may be more practical. Condemnation proceedings involving multiple interests in the same parcel of land will involve similar facts and a court will often be able to more fairly and efficiently manage the proceedings between different interest holders when the proceedings are consolidated. Indeed, it will often be more cumbersome and expensive to conduct separate proceedings. Thus, in many cases, conducting separate proceedings may run contrary to the goals of judicial efficiency and could result in less uniformity in the condemnation awards granted to interest holders. Accordingly,

---

**86.** *Town of Perry v. Thomas*, 82 Utah 159, 22 P.2d 343, 347 (1933).

**87.** *Id.*

absent circumstances that would require separate proceedings, it may be best for the court to independently assess the value of individual interests in condemned property through consolidated proceedings.

¶ 44 For the foregoing reasons, we conclude that, under the Proceedings Statute, the court may conduct consolidated or separate proceedings in cases involving multiple interests in a single parcel of land as well as multiple parcels of land.

B. *Because It Is Unclear Whether the District Court Intended that the Assessment of the Value of FPA's and Kmart's Interests Be Determined in Separate or Consolidated Proceedings, We Remand with Instructions for the District Court to Determine Whether to Order Separate or Consolidated Proceedings in this Matter*

¶ 45 The district court granted FPA's motion asking the court to order separate just compensation determinations and "order[ed] separate determinations of the just compensation due to FPA and to Kmart for injury to their respective interests in the subject property." As discussed previously, the district court was correct in ruling that the value of FPA's and Kmart's interests must be individually assessed. And as we have also discussed, this assessment may be conducted through either separate or consolidated proceedings. But because the district court's analysis did not distinguish between individually assessing interests and conducting separate proceedings, it is unclear whether the district court intended for the assessment of FPA's and Kmart's interests to be conducted in separate or consolidated proceedings. Accordingly, we remand to give the district court an opportunity to rule on whether the assessment of interests should be conducted in separate or consolidated proceedings.

¶ 46 In its motion, FPA asked the court to determine separately "the just compensation due FPA from ... the determination of the just compensation due to any of FPA's codefendants." In its supporting memorandum, FPA argued that "there is no principled reason why FPA should be required to participate in a process—including a jury trial" to determine the just compensation due to "Kmart for its *limited* estates in only *a portion* of the [condemned parcel], when the [c]ourt (not a jury) will apply different principles and testimony to determine the just compensation [due to] FPA for the diminution in value of its *fee* interest in *all* of the [condemned parcel]."

¶ 47 In response, the court concluded that the value of the respective interests of the parties must be individually assessed rather than assessed through the apportionment approach discussed in *Brown*, and it stated in its memorandum decision that it "grants FPA's [m]otion and orders separate determinations of the just compensation due to FPA and to Kmart for injury to their respective interests in the subject property." As the court provided no further guidance or discussion in its order or memorandum decision, it is unclear whether the court exercised its discretion to grant FPA and Kmart the opportunity to have their interests independently assessed in separate condemnation proceedings.

¶ 48 Indeed, in its petition for interlocutory appeal, UDOT defines the issue presented on appeal as follows: "Does Utah law require UDOT, when condemning a single parcel of property, to provide a separate appraisal and separate valuation *proceedings* to each claimant of an interest in the property without regard to whether the sum of the interests exceeds the value of the property as a whole?" (Emphasis added.) UDOT further explains that its petition is "based on the immediate need to resolve whether UDOT must separately appraise each individual interest in a single parcel of condemned property and engage in separate valuation *proceedings* with each interest holder." (Emphasis added.)

¶ 49 But in their responses to UDOT's petition for interlocutory appeal, both FPA and Kmart dispute that the district court's order granted separate proceedings to FPA and Kmart and that this is an appropriate issue for appeal. For instance, FPA states that "although FPA did ask the district court to order separate trials... the district court did not rule on that request." Moreover,

Kmart points out that the district court "explicitly ordered only 'separate determinations of the just compensation due to FPA and to Kmart,' and was silent on the method and attendant considerations or requirements." And Kmart notes that "[n]o direction or mandates were given as to the amount of appraisals that would be needed, or that separate trials would even be needed."

¶ 50 Accordingly, we remand this case to the district court with instructions for it to determine whether to conduct the independent assessment of the value of FPA's and Kmart's individual interests in the Access through separate or through consolidated proceedings.

## CONCLUSION

¶ 51 We conclude that the district court was correct in determining that Utah law requires that interest holders in condemned property have the value of their respective interests individually assessed under the aggregate-of-interests approach. We also conclude that, under the Proceedings Statute, this independent valuation of interests may be conducted in separate or consolidated proceedings, at the discretion of the district court. Because it is unclear in this case whether the district court intended to exercise its discretion and order separate proceedings, we remand to the district court with instructions to determine whether to independently assess the value of the respective interests of FPA and Kmart in separate or consolidated proceedings.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.