MORTENSEN, Judge:
¶1 Rocky Mountain Power sought a conditional use permit from Wasatch County, which the County denied. The Utility Facility Review Board thereafter ordered the County to issue the permit. Because in doing so the Review Board disregarded Wasatch County's statutory authority, we set aside the Review Board's ruling.
¶2 Rocky Mountain obtained an easement over property owned by Promontory Investments LLC (the Property). The Property sits in both Summit and Wasatch counties. Rocky Mountain's current transmission line runs through a portion of the Property that is located in Summit County.
¶3 Rocky Mountain supplies power to one of the fastest growing regions of Utah, of which Summit and Wasatch counties are part. Because of the region's past and projected growth, Rocky Mountain has undertaken a project to increase transmission capacity and create alternative transmission pathways (the Project). Part of the Project requires upgrading a sixty-seven-mile portion of transmission line. Only 0.26 miles of the proposed line would sit in Wasatch County, on Promontory's land.
¶4 The changed location-from where the current transmission line sits in Summit County to where the proposed line would sit in Wasatch County-resulted from a request by Promontory when Rocky Mountain approached it about upgrading the current transmission line to a higher capacity line. Promontory asked Rocky Mountain "to consider alternative siting locations on" the Property. It is Rocky Mountain's practice to accommodate such a request from landowners, provided the landowner pays the cost of relocation and the new location is acceptable to Rocky Mountain. Accordingly, Rocky Mountain and Promontory considered five alternative locations for the transmission line. Promontory agreed to grant a new easement and pay additional costs associated with constructing the new line in Promontory's preferred location along the south and east perimeters of the Property-including the 0.26 miles of Wasatch County land. The agreement reached between Promontory and Rocky Mountain included a provision that if Rocky Mountain were unable to obtain necessary permits, it could terminate the agreement and leave the transmission line in its current location.
¶5 In its quest to obtain authorization for the construction of the segment of the transmission line that would be located in Wasatch County (the Segment), Rocky Mountain was in frequent contact with Wasatch County officials, planning staff, and nearby property owners. Wasatch County was concerned about the Segment's compliance with existing ordinances aimed at limiting structures that protrude above the visual ridgeline. In its application for a conditional use permit,[1] *960 Rocky Mountain "included four options for the proposed alignment of the transmission line in Wasatch County." The Wasatch County Planning Commission denied the permit, concluding that none of the four options were acceptable, as "there was no way to mitigate the impacts of [the Segment] on neighboring properties."
¶6 Rocky Mountain appealed the denial of the permit to the Wasatch County Board of Adjustment, which agreed with the Planning Commission and concluded that the proposed transmission upgrade violated Wasatch County's ridgeline ordinance and likewise denied the permit.
¶7 Rocky Mountain then appealed to the Utility Facility Review Board. The Review Board determined that the Segment was "needed to provide safe, reliable, adequate, and efficient service" to Rocky Mountain customers and ordered Wasatch County to issue the permit within sixty days. Wasatch County now seeks judicial review of that order.
¶8 Wasatch County challenges the Review Board's order in several respects, but we are persuaded by its specific contention that "[e]ven when the facility is needed a local government can impose any conditions they like as long as the requirements do not impair the safe, reliable, and adequate provision of service, and the local government pays for any resulting increased costs." (Emphases in original.) (Citing Utah Code Ann. § 54-14-201 (LexisNexis 2010).) "In other words," the County contends, "when two alternative sites allow a public utility to provide equally safe, reliable, adequate, and efficient service," the Review Board must "defer to local governments, not public utilities." This contention rests on a challenge to the Review Board's interpretation of section 54-14-201 and related statutes, which we review for correctness. See Utah Dep't of Transp. v. FPA West Point, LLC , 2012 UT 79, ¶ 9, 304 P.3d 810.
¶9 To the extent relevant in this case, the Utility Facility Review Board Act (the Act) regulates disputes between public utilities and local governments. See Utah Code Ann. §§ 54-14-101 to -308 (LexisNexis 2010 & Supp. 2017). Under the Act, a public utility may seek board review when "a local government has prohibited construction of a facility which is needed to provide safe, reliable, adequate, and efficient service to the customers of the public utility." Id. § 54-14-303(1)(d) (Supp. 2017). Rocky Mountain filed its petition with the Review Board under this subsection. The Review Board agreed that "[t]his dispute arises under Utah Code Ann. § 54-14-303(1)(d) because the County denied [Rocky Mountain's] request for a [conditional use permit] to construct [the Segment]." Thus, the Review Board's order focused almost exclusively on this discrete portion of section 303. Similarly, the parties on judicial review primarily discuss this statute, arguing over the definition of "needed" and the Review Board's determination that the Segment is needed.
¶10 However, this discussion is misplaced and, ultimately, immaterial. Wasatch County's alternative argument rests on its power to impose conditions on the construction of utility facilities, even when such facilities are needed. This argument finds its origin in subsection (1)(a) of the same statute, which provides that if "a local government has imposed requirements on the construction of a facility that result in estimated excess costs without entering into an agreement with the public utility to pay for the actual excess cost," the public utility may seek board review. Id. § 54-14-303(1)(a). While neither Rocky Mountain nor the Review Board identified the present dispute as one under this subsection during the administrative proceedings, we have no difficulty concluding that they should have. Wasatch County's decision to deny Rocky Mountain its requested permit will likely compel Rocky Mountain to build the power line elsewhere, which may end up being more expensive. Under the Act, Wasatch County is responsible for paying any additional costs that result from its decisions regarding siting and conditions.
*961 ¶11 Furthermore, the Review Board's ultimate order-that Wasatch County was required to issue the permit-rested on a faulty legal premise, a misunderstanding of its role and obligations. The Review Board concluded that, "so long as the location [of the Segment] ... satisfies the need for safe, reliable, adequate and efficient service[,] the Board is bound to direct its construction." But, as Wasatch County correctly points out, such an automatic approval process would "necessarily nullif[y] the policy judgments of Wasatch County's politically accountable local officials by administrative fiat." Instead, Wasatch County retains the authority to place conditions on Rocky Mountain's construction of transmission lines, no matter how necessary those lines may be. See, e.g. , Utah Code Ann. § 54-14-201 (LexisNexis 2010) (directing that local governments "may require or condition the construction of a facility in any manner" so long as the conditions do not impair service and the local governments pay excess costs resulting from the conditions). And, at bottom, that is what Wasatch County did.[2] This dispute is accordingly not premised on any "prohibited construction of a facility." See id. § 54-14-303(1)(d) (Supp. 2017).
¶12 Wasatch County has in place a ridgeline ordinance intended "to protect valuable views of the ridgelines of Wasatch County by providing regulations." And the County determined that the Segment, as proposed by Rocky Mountain, would violate that ordinance. In denying the conditional use permit on this basis, Wasatch County did not deny construction of the Segment altogether; it denied any construction that violated the ridgeline ordinance. Put more simply, Wasatch County told Rocky Mountain to put the Segment somewhere else. Because it did so "without entering into an agreement with the public utility to pay for" any increased cost of putting it elsewhere, see id. § 54-14-303(1)(a), Rocky Mountain's appeal to the Review Board was authorized under subsection (1)(a).
¶13 Regardless of the Review Board's determination that the Segment was necessary, the order directing Wasatch County to issue the conditional use permit was in error because it disregarded Wasatch County's authority to place conditions on the construction of transmission lines. Given the presence of multiple alternative locations for the Segment that would not impair Rocky Mountain's ability "to provide safe, reliable, and adequate service to its customers," see id. § 54-14-201(1) (2010), Wasatch County was within its right to require Rocky Mountain to comply with the ridgeline ordinance. Of course, with that right comes the obligation to pay any excess costs that might accompany building the Segment in an alternative location, including a location within the existing easement corridor in Summit County. See id. § 54-14-201(2). For this reason, we set aside the Review Board's order and direct the Review Board to conduct further proceedings consistent with this opinion.

Rocky Mountain actually submitted multiple applications for conditional use permits, which were withdrawn or continued for a variety of reasons. We are concerned only with the final application, filed in September of 2015.

In briefing and at oral argument in this case, Rocky Mountain maintained that Wasatch County prohibited construction of the Segment. We cannot accept that argument where the language of section 54-14-303(1)(a) so clearly anticipates the very situation now before us. That is, Rocky Mountain attempts to characterize the dispute this way: when Wasatch County informed Rocky Mountain that the location of the Segment must comply with the ridgeline ordinance, without clarifying that it would pay any increased costs associated with compliance, Wasatch County's conduct amounted to a denial under subsection (1)(d). But in reality, that conduct is precisely what is anticipated by subsection (1)(a): "a local government has imposed requirements on the construction of a facility" and those requirements might "result in estimated excess costs," but Wasatch County imposed those requirements "without entering into an agreement with the public utility to pay for the actual excess cost." See Utah Code Ann. § 54-14-303(1)(a) (LexisNexis Supp. 2017). Importantly, Wasatch County cannot prohibit Rocky Mountain from relocating the line within Summit County. But if doing so would cost more than placing the line in the proposed portion of Wasatch County, Wasatch County may be required to pay any excess costs.